IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TEAMSTERS LOCAL UNION NO. 639,    *

Plaintiff,    *

v.    *    Civil Action No. 23-780-PJM

TRANSDEV SERVICES, INC.
    *
Defendant.

\*\*\*

## MEMORANDUM OPINION

Teamsters Local Union No. 639 (the "Union") has filed a Motion for Summary Judgment (ECF No. 19). Transdev Services, Inc. has filed a Motion to Stay Case and Remand to Arbitration or, in the Alternative, to Permit Its Use of Expert Evidence (ECF No. 24). Both Motions are fully briefed (*see* ECF Nos. 23, 25, 27, 30). Based on the parties' submissions, the Court finds that a hearing is unnecessary. *See* D. Md. Local R. 105.6. For the reasons provided below, the Court will **DENY** Transdev's Motion to Stay Case and Remand to Arbitration or, in the Alternative, to Permit Its Use of Expert Evidence (ECF No. 24) and **GRANT** the Union's Motion for Summary Judgment (ECF No. 19).

## BACKGROUND

The factual and procedural backgrounds described in both Motions are substantially the same. Accordingly, the Court recounts the facts relating to the Union's Motion for Summary Judgment (ECF No. 19).

**I.**    **The Parties, Their Agreement, the Termination of Sablan, and the Arbitration Award**

The Union is an unincorporated labor organization that serves as the "exclusive bargaining representative of certain drivers, mechanics, dispatchers, gatekeepers, and utility employees"

employed by Transdev, including Stephen Sablan. *See* ECF No. 1 (Complaint) ¶¶ 4, 6; ECF No. 19-2 (Union Mot.) at 2.

Transdev is a corporation incorporated in Delaware that is licensed to do business in the State of Maryland and as such operates the Washington Metropolitan Area Transit Authority ("WMATA")'s MetroAccess program. Union Motion at 2; ECF No. 8 (Transdev Answer) ¶ 4. "MetroAccess provides transportation and paratransit services to elderly and disabled individuals in Maryland and the Washington, D.C. area." Transdev Answer ¶ 4; Union Mot. at 2; ECF No. 19-3 (Clark Decl.) ¶ 4.

On March 21, 2023, the Union filed this action under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, on behalf of Sablan to enforce a favorable arbitration award stemming from Sablan's grievance with his employer, Transdev. *See* Complaint ¶¶ 1, 12, 13.

At all relevant times, the Union and Transdev have been parties to a collective bargaining agreement (the "Agreement") that sets forth the terms and conditions of employment for all Union members working for Transdev. *See* Clark Decl. ¶ 5; Transdev Answer ¶ 8. Among other things, the Agreement establishes the procedures that Transdev must use when it disciplines, suspends, or terminates a Union Member. *See* Clark Decl. ¶¶ 6-15; ECF No. 23 (Transdev Opp'n) at 5. One of the conditions of the Agreement provides that Union members who believe they have been disciplined, suspended, or terminated in violation of the Agreement must register their complaint through a grievance and arbitration procedure. *See* Clark Decl. ¶ 10; *see also* ECF No. 19-5 (Ex. 1 to the Union's Mot. for Sum. J.) (the "Agreement") at 11.

This condition, Article 16 of the Agreement, provides that if "no satisfactory settlement" between the Union and Transdev can be reached according to internal processes, "the parties shall select a mutually agreeable and impartial Arbitrator within ten (10) working days after disagreement." Agreement, art. 16, § 2. If "the position of the Union is sustained, the aggrieved

2

party shall be entitled to all the benefits of this Agreement which would have accrued to him had there been no grievance." *Id.* § 3. "[A] decision of the Arbitrator will be final and binding on all parties and the employee involved." *Id.* § 4.

On April 8, 2021, Transdev terminated Sablan for his alleged failure to pass a drug test. *See* ECF No. 19-4 (Sablan Decl.) ¶ 3; Transdev Opp'n at 5. Following Sablan's termination, the Union initiated a grievance proceeding on his behalf, alleging that Sablan's termination violated the parties' Agreement. *See* Sablan Decl. ¶ 5; Transdev Opp'n at 5. This eventually led to arbitration, which concluded on November 29, 2022, with a determination by the parties' chosen arbitrator, Kathleen Jones Spilker. Arbitrator Spilker concluded that Transdev did, indeed, violate the Agreement. Sablan Decl. ¶¶ 5-7; *see* ECF No. 19-12 (Ex. 8 to the Union's Mot. for Sum. J.) ("Arbitration Decision"). As a remedy, Arbitrator Spilker directed that Sablan be reinstated with back pay from the date of his discharge, "less any benefits received from Unemployment Compensation or other interim employment" (the "Award"). Arbitration Decision at 17.

## II.    Post-Award Events

Sablan was reinstated in early December 2022. Sablan Decl. ¶ 8; Clark Decl. ¶ 29; Transdev Opp'n at 5. Shortly thereafter, Transdev's general manager sent Sablan an "Information Request" letter, asking Sablan to provide "evidence of [his] efforts to mitigate damages, as well as payments [he] earned from other sources, including other employment and unemployment compensation," which, Transdev claimed, "must be presented to the arbitrator." ECF No. 23-1 at 1. Among other things, Transdev sought "[a]ny and all information and documents regarding any newspapers, trade publications, periodicals, magazines . . . internet job site, web site, search engine, or other internet means" that Sablan "consulted or utilized in any way for the period March 5, 2021 to the present in any attempt to find any employment." *Id.* at 2. Transdev also sought "[c]opies of any and all resumes" that Sablan prepared during his period of termination, "[c]opies of any and all federal,

3

state, and local tax returns . . . filed by [Sablan] for tax years 2021 through the present" and "[a]ll records of visits to Local 639 and use of any referral procedures available through Local 639 since March 5, 2021." *Id.* at 2-3.

Following Transdev's Information Request letter, counsel for the parties engaged in prolonged and not entirely lucid discussions regarding the propriety of Transdev's information requests and the Union's obligation to provide information regarding Sablan's mitigation of damages. *See* Union Mot. at 5-6; Transdev Opp'n at 5-10. To summarize: the Union refused to provide the requested information and documents. Instead, counsel for the Union and Sablan asserted in a letter dated January 20, 2023 (which Transdev claims to not have received until April) that Sablan received $10,940 in interim earnings and no unemployment benefits, which translated to a back pay demand of $76,472 to compensate Sablan for the pay he lost during his improper termination. *See* Transdev Opp'n at 6-7; Clark Decl. ¶ 29 ("[T]he Union's January 20, 2023 letter to the Employer states that Transdev owes Mr. Sablan $76,472.00 under the Arbitrator's Award ($87,412.00 in back pay, less $10,940.00 in interim earnings and $0.00 in unemployment compensation)."). Shortly thereafter, Sablan asserted that he discovered that he had made an "accounting error" in his previous calculation of his interim earnings, and he had in fact earned $11,356 from interim employment. Clark Decl. ¶ 30; Sablan Decl. ¶ 9; Transdev Opp'n at 9. That is, Sablan says he learned that he earned more in interim employment than initially believed, such that his back pay demand to Transdev was reduced by $416.

Transdev has refused to remit any amount of back pay to Sablan at any time.

**III.   Proceedings Before the Court**

As noted, *supra*, the Union filed suit in this Court on March 21, 2023, to enforce the Award under Section 301 of the LMRA. *See* Complaint. The Court entered a Scheduling Order (ECF No.

4

16) on April 25, 2023, which gave the parties four-and-a-half months for discovery, with a cut off

for discovery on September 5, 2023.

During this discovery period, neither party filed any motions seeking to compel the

production of documents or other information from the other party. On August 31, 2023, Transdev

filed a Motion for Extension of Time to Complete Discovery (ECF No. 20), in which Transdev

stated that it intended to issue a subpoena for the deposition of Sablan and requested time to conduct

the deposition. Transdev's Motion also noted that it had propounded written discovery on the Union

on August 23, 2023. *See* ECF No. 20 at 1. The Court denied Transdev's Motion in an Order dated

September 26, 2023 (ECF No. 26), holding that Transdev's Motion was "too little, too late," and

that Transdev failed to establish the "good cause" required for the extension of discovery deadlines

under its Scheduling Order and Federal Rule of Civil Procedure 6(b)(1)(A).

The present Motions followed.

## DISCUSSION

I.    **Transdev's Motion to Stay Case and Remand to Arbitration or, in the Alternative, to Permit Its Use of Expert Evidence**

Arbitration is highly favored as a means of resolving labor disputes. As the Fourth Circuit

has observed, arbitration is "a major factor in achieving industrial peace, a vital force in establishing

confidence and minimizing confusion at all levels of the labor-management relationship and a major

constructive force in the collective bargaining process itself." *Richmond, Fredericksburg &

Potomac R. Co. v. Transp. Commc'ns Int'l Union*, 973 F.2d 276, 278 (4th Cir. 1992). Among other

virtues, arbitration furthers the interests of the swift and inexpensive resolution of labor disputes,

*Cannelton Indus., Inc. v. Mine Workers Dist. 17 Local 8843*, 951 F.2d 591, 595 (4th Cir. 1992),

honoring the reliability and predictability of dispute resolution procedures that labor and

management bargain for in collective bargaining agreements, *Steelworkers v. Enterprise Wheel &

*Car Corp.*, 363 U.S. 593, 599 (1960), and the bedrock principle of finality of an arbitrator's decision

on the merits of a dispute, *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987)

("The federal policy of settling labor disputes by arbitration would be undermined if courts had the

final say on the merits of the awards." (quoting *Enterprise Wheel & Car Corp.*, 363 U.S. at 596))).

For these reasons, arbitration awards are subject to very narrow judicial review.  As the

Supreme Court explained in *Major League Baseball Players Association v. Garvey*, 532 U.S. 504

(2001) (per curiam):

> Courts are not authorized to review the arbitrator's decision on the merits despite
> allegations that the decision rests on factual errors or misinterprets the parties'
> agreement. . . . [I]f an arbitrator is even arguably construing or applying the contract
> and acting within the scope of his authority, the fact that a court is convinced he
> committed serious error does not suffice to overturn his decision. It is only when
> the arbitrator strays from interpretation and application of the agreement and
> effectively dispenses his own brand of industrial justice that his decision may be
> unenforceable. When an arbitrator resolves disputes regarding the application of a
> contract, and no dishonesty is alleged, the arbitrator's improvident, even silly,
> factfinding does not provide a basis for a reviewing court to refuse to enforce the
> award.

*Id.* at 509.  Put differently, a court's review of an arbitration award is "among the narrowest known

at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration

at all—the quick resolution of disputes and the avoidance of the expense and delay associated with

litigation." *Apex Plumbing Supply, Inc. v. U.S. Supply, Inc.*, 142 F.3d 188, 193 (4th Cir. 1998).

Accordingly, when enforcing arbitration awards, courts must determine (1) whether the

award draws its essence from the parties' agreement; and (2) whether the award exceeds the scope

of the submission to the arbitrator. *See W. Elec. Co., Inc. v. Commc'n Equip. Workers, Inc.*, 409 F.

Supp. 161, 166 (D. Md. 1976).  If both these conditions are met, the arbitrator "did the job they were

told to do," and a court must enforce the award. *Raymond James Fin. Servs., Inc. v. Bishop*, 596

F.3d 183, 190 (4th Cir. 2010) (internal quotation marks omitted).

Because, as the Court explains, *infra*, Arbitrator Spilker's Award does draw its essence from the parties' Agreement and the Award did not exceed the scope of submission to the arbitrator, Transdev's Motion to Stay Case and Remand to Arbitration or, in the Alternative, to Permit Its Use of Expert Evidence (ECF No. 24) will be **DENIED.**[1]

## II.   The Union's Motion for Summary Judgment

### A. Legal Standard

A motion for summary judgment may be granted only when there are no genuine disputes of material fact to be decided at trial and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). In determining whether a genuine dispute of material fact exists, a court views the evidence submitted by the parties and draws inferences therefrom in the light most favorable to the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007). The mere existence of a factual dispute is not by itself sufficient to defeat a motion for summary judgment—the dispute must be related to a material fact, i.e., one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 247 (1986).

---

[1] Transdev argues that this case should be remanded to Arbitrator Spilker for "clarification" of the amount owed to Sablan because the Award is "ambiguous" as to the specific dollar amount of his back pay. ECF No. 24 at 8-9. As the Fourth Circuit has explained, "courts must approach remand to the arbitrator with care lest the arbitrator believe that a 'remand' is equivalent to a 'retrial' with an expectation of an opposite result the second time around." *Raymond James Fin. Servs.*, 596 F.3d at 191. Further, courts often enforce arbitration awards even though an exact amount of back pay has not yet been calculated. *See, e.g., Enterprise Wheel & Car Corp.*, 363 U.S. at 599. The Court recognizes that certain decisions suggest remanding to an arbitrator is the "usual course" when an award of back pay does not specify a particular figure and the parties dispute the amount owed. *See, e.g., Aluminum, Brick & Glass Workers Int'l Union v. AAA Plumbing Pottery Corp.*, 991 F.2d 1545, 1549 (11th Cir. 1993); *San Antonio Newspaper Guild v. San Antonio Light Div.*, 481 F.2d 821, 824-25 (5th Cir. 1973). However, those cases are inapposite because in those cases the arbitrators retained jurisdiction over disputes concerning an award's remedy, or the disputes over the back pay amount had been raised before the arbitrator in the first place. *See, e.g., AAA Plumbing Pottery Corp.*, 991 F.3d at 1546; *San Antonio Newspaper Guild*, 481 F.2d at 824-25. The circumstances presented by Transdev's request for a remand stand in marked contrast; Transdev asks for remand to litigate the question of mitigation, a topic it failed to raise at the arbitration proceeding and yet again failed to explore during the discovery period granted by the Court. In the Court's judgment, Transdev seeks permission to conduct precisely the kind of "retrial" that the Fourth Circuit has cautioned against. *See Raymond James Fin. Servs.*, 596 F.3d at 191.

*B. Whether a Genuine Dispute of Material Fact Exists for Trial*

Transdev contends that that the parties dispute the amount of back pay owed to Sablan because the Award does not specify a dollar amount and the Union and Sablan have presented conflicting demands, with no documentation to support Sablan's demand for $76,056 in back pay. *See* Transdev Opp'n at 12-15. This dispute, according to Transdev, includes the question of whether Sablan adequately mitigated his damages from the time he was improperly terminated until the date of his reinstatement. *See id.* at 13-16. The Union counters that Transdev is seeking to manufacture a dispute where none exists—after all, Transdev has not presented any evidence that would call into question Sablan's latest demand amount, aside from pure speculation and insinuation about Sablan and the Union's good faith. *See* ECF No. 25 at 5, 8-9.

Transdev does not argue that the Award fails to draw its essence from the parties' Agreement. Nor does it argue that the Award exceeds the scope of the submission to Arbitrator Spilker. That Transdev effectively concedes these issues—the only material issues for the Court when reviewing the Award—suffices for the Court to grant summary judgment in the Union's favor. *See Garvey,* 532 U.S. at 509; *Pa. Nat'l Mut. Cas. Ins. Co. v. Kirson,* 525 F. Supp. 3d 628, 634 (D. Md. 2021) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument") (quoting *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trustees,* 558 F.3d 731, 735 (8th Cir. 2009)).

In any event, the Court finds that the Award does in fact draw its essence from the parties' Agreement. Arbitrator Spilker found that Transdev violated the Agreement by terminating Sablan thirty-three days after learning that he did not provide an acceptable drug sample. Arbitration Decision at 17. Her conclusion that this delayed action "did not conform to the due process requirements set forth in Article 15, Section 1 of the Agreement" is unquestionably derived from the timing requirements provided in the Agreement. *See* Agreement, art. 15, § 1. This is not reflective of any personal "brand of industrial justice" from Arbitrator Spilker that would justify a refusal to

8

enforce the Award, *Garvey*, 532 U.S. at 509, but rather is the result contemplated by the Agreement's terms. The same goes for Arbitrator Spilker's decision with respect to the issue of remedy. The Agreement expressly provides that if the Union prevails at arbitration, "the aggrieved party shall be entitled to all benefits of this Agreement which would have accrued to him had there been no grievance." *Id.* § 3. That is precisely the remedy that the Award provides. *See Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Local 3-372*, 76 F.3d 606, 608 (4th Cir. 1996).

Nor can it be argued that Arbitrator Spilker acted outside her authority or that the Award exceeds the scope of the arbitration submission. Article 16 of the Agreement provides that employee grievances are to be presented to a "mutually agreeable and impartial Arbitrator" if the parties cannot resolve their disputes internally. Agreement, art. 16, § 2. The parties mutually agreed to appoint Spilker as the Arbitrator of Sablan's grievance. Both sides presented argument and evidence in support of their respective positions and filed post-hearing briefs. *See* Arbitration Decision at 2. The submission to Arbitrator Spilker included the question of "whether or not the Company had just cause to terminate [Sablan's] employment following his departure from the drug testing site prior to completion of the procedure," and the question of remedy, for which the Union requested that Sablan "be returned to work immediately & made whole in every way." *Id.* Arbitrator Spilker's decision found that Transdev violated the timing requirements of the Agreement, and ordered that Sablan be given "back pay from the date of his discharge, less any benefits received from Unemployment Compensation or other interim employment," *id.* at 17, an award that is expressly contemplated by Article 16 of the Agreement. *See* Agreement, art. 16, § 3.

Transdev now contends that the parties dispute the dollar amount of back pay owed to Sablan, which Transdev believes is material and should preclude summary judgment. *See* Transdev Opp'n at 12-15.

The Court is not persuaded. As a preliminary matter, Transdev presents no evidence to create a genuine dispute as to the amount owed to Sablan or to suggest bad faith on his part. *See* Transdev Opp'n at 13-14. Instead, Transdev argues that "[b]ecause the Union has presented two different figures for interim earnings, the Court cannot award the second amount without further information or evidence." *Id.* at 14. According to Transdev, the Union's failure to provide "any other information or documentation" in support of its "conclusory statements" about the Sablan's interim employment suggests that Sablan may be owed an amount different (likely lower) than what he demands. *See id.* at 13-15. This argument tramples on the facts and the law. It is well accepted that a party "cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001).

The Union has presented two sworn declarations (one from Sablan and another from Union official Clark) stating that he is entitled to recover $76,056 in back pay. *See* Clark Decl.; Sablan Decl. This figure was derived by subtracting Sablan's interim earnings ($11,356) from the pay that Sablan would have received had he not been terminated by Transdev ($87,927). *See* Clark Decl. ¶ 27; *see also* Agreement at 22 (providing pay rates); ECF No. 19-6 (providing pay rates for additional time period). Both declarations state that Sablan earned $11,356 through interim employment. *See* Clark Decl. ¶ 30; Sablan Decl. ¶ 9. Transdev offers not a scintilla of evidence to raise doubts with respect to the assertions made in these declarations.

As Sablan's employer (and the one who writes his paycheck), Transdev was well aware of the amount that Sablan would have earned from Transdev but for his improper termination. It could easily have calculated the back pay owed to him upon receiving his report of his updated interim earnings, contrary to Transdev's representation that it was "unable" to make such calculations absent

further corroboration. Transdev Opp'n at 12.[2]  Transdev also contends that it was not obligated to accept the Union's representations about Sablan's interim employment, absent further documentation to corroborate the amount, and that absent this further corroboration, summary judgment in favor of the Union would be inappropriate. *Id.* at 12-15.[3]  This is especially true, says Transdev, given that the Union has rebuffed Transdev's requests for information and document related to Sablan's mitigation of damages. *Id.* at 13-15.

The Court does not believe that denial of summary judgment in favor of the Union is the appropriate response to the Union's failure to provide documents to corroborate its back pay demand.[4]  Recall that the Court's Scheduling Order granted the parties four-and-a-half months for the completion of discovery. At no point during the discovery period did Transdev file a motion to compel the Union to produce any information or documents pertaining to its present demand. That would have been the proper timeframe and proper means to extract evidence that Transdev now claims is required to confirm the Union's demand. *See* Fed. R. Civ. P. 37. Such a motion, if granted, would have provided Transdev ample opportunity to obtain evidence necessary to defeat the Union's Motion for Summary Judgment. *See* Fed. R. Civ. P. 56(a), (e). Instead, Transdev has belatedly filed a motion to extend the deadline for discovery. *See* ECF No. 20. But Transdev has presented nothing beyond "mere speculation [and the] compilation of inferences," *Shin*, 166 F. Supp. 2d at 375, to

---

[2] Whatever the Union might or might not have done with respect to Transdev's request for information, Transdev could have and should have immediately remitted the undisputed portion of the back pay owed to Sablan ($76,056) and then disputed the remainder ($11,356). Apparently playing hardball, it has to date remitted not a penny.

[3] The cases cited by Transdev in support of its argument that disputes over damages preclude summary judgment are inapposite here. *See* Transdev Opp'n at 14 (citing *Jackson v. The Standard Fire Ins. Co.*, 406 F. Supp. 3d 480, 494-95 (D. Md. 2019); *EEOC v. Ecology Services, Inc.*, 447 F. Supp. 3d 420, 447 (D. Md. 2020); *Guessford v. Pa. Nat'l Mutual Cas. Ins. Co.*, 983 F. Supp. 2d 652, 667 (M.D.N.C. 2013)). None of these cases relate to the enforcement of an arbitration award pursuant to a collective bargaining agreement, especially where a party failed to raise the issue of mitigation of damages before the arbitrator. In any event, these cases are not binding on this Court.

[4] Transdev suggests that the Union's failure to provide corroborating information could amount to an unfair labor practice in violation of the Union's obligations under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(b)(3). *See, e.g.,* Transdev Opp'n at 12. Whether the Union has satisfied its obligations under the NLRA is not material to the resolution of the parties' Motions. The Court declines to address that issue here.

suggest that a dispute exists as to the amount of back pay owed to Sablan. Even if it had, the result would likely be the same, given the limited scope of the Court's review of arbitration awards and the lack of any suggestion that Arbitrator Spilker's decision did not draw its essence from the parties' Agreement or that it in any way exceeded the scope of the arbitration submission. *See W. Elec. Co., Inc.*, 409 F. Supp. at 166.

There is *no genuine* dispute of material fact as to the compensation due to Sablan. Accordingly, the Court will **GRANT** summary judgment in favor of the Union and enter an order enforcing the Award.

### III.   Whether the Union Is Entitled to Attorney's Fees

In addition to summary judgment, the Union seeks an award of attorney's fees. Union Mot. at 13-15. A court may award attorney's fees in proceedings to enforce an arbitration award rendered pursuant to a collective bargaining agreement if a party's challenge to the award is pursued "without justification." *United Food & Com. Workers, Local 400 v. Marval Poultry Co.*, 876 F.2d 346, 350 (4th Cir. 1989); *see Local 149, Int'l Union, United Auto. Workers of Am. v. Am. Brake Shoe Co.*, 298 F.2d 212, 216 (4th Cir. 1962); *Media Gen. Operation, Inc. v. Richmond Newspapers Prof'l Ass'n*, 36 Fed. App'x 126, 133 (4th Cir. 2002). If the losing party "challenges the remedial aspects of the award" by presenting arguments that "were not made before the arbitrator, but for the first time in the district court," an award of attorney's fees is justified. *Id.* at 352.

As noted, Transdev failed to raise the issue of mitigation of damages before Arbitrator Spilker. In *Marval Poultry*, the Fourth Circuit found that such an issue, raised for the first time when court-enforcement of the arbitral award was sought, was not justified and thus authorized an award of attorney's fees. *See* 876 F.2d at 352. The *Marval Poultry* court pointedly remarked that "[p]arties to arbitration proceedings cannot sit idle while an arbitration decision is rendered and then, if the decision is adverse, seek to attack the award collaterally on grounds not raised before the arbitrator."

*Id.* at 353 (citation omitted). These concerns apply here with even greater force than in *Marval Poultry* because Transdev sat idly by, not only during the arbitration proceedings, but also while the case pended in this Court, failing to seek any discovery on the issue of back pay here until the last possible moment. *See* ECF Nos. 20, 26. Transdev has litigated this dispute in two forums, engaging in what can only be described as dilatory tactics, resulting in unnecessary litigation, which indisputably frustrates the aim of federal policy favoring the arbitration of labor disputes. *Apex Plumbing Supply, Inc.*, 142 F.3d at 193. The Court takes the occasion to sanction such a tactic.[5]

Accordingly, the Court will **GRANT** the Union's request for reasonable attorney's fees. The Union shall have fourteen (14) days from the issuance of this Memorandum Opinion and accompanying Order to submit an affidavit containing information with respect to the amount of fees sought, consistent with the Court's Local Rule 109.2(b). Transdev shall have (10) days thereafter to respond.

## CONCLUSION

In conclusion, the Court will **ORDER** that:

1. Transdev's Motion to Stay Case and Remand to Arbitration or, in the Alternative, to Permit Its Use of Expert Evidence (ECF No. 24) is **DENIED**;

2. The Union's Motion for Summary Judgment (ECF No. 19) is **GRANTED**;

3. The Clerk is **DIRECTED** to enter judgment in favor of the Union in the amount of $76,056; and

4. The Union's request for attorney's fees is **GRANTED** relative to the parties' Motions. The Union shall have fourteen (14) days from the issuance of this Order to submit an affidavit

---

[5] The Union's litigation strategy is not without its faults. This dispute could very well have been resolved more efficiently if the Union had simply provided, for example, Sablan's redacted tax returns for 2021 and 2022, which would presumably reflect his earnings from interim employment.

containing information with respect to the amount of fees sought, consistent with the Court's

Local Rule 109.2(b). Transdev shall have (10) days thereafter to respond.

A separate Order will issue.

November __, 2023

**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

14